# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEVE G. PATSOUREAS,** | : CIVIL ACTION NO. 1:17-CV-555 |
| **Plaintiff** | : (Chief Judge Conner) |
| v. | : |
| **CHOICE HOTELS INTERNATIONAL, COMFORT SUITES, and SNK HOTELS, INC.,** | : |
| **Defendants** | : |

## MEMORANDUM

Plaintiff Steve G. Patsoureas ("Patsoureas") alleges that defendants Choice Hotels International ("Choice Hotels"), Comfort Suites, and SNK Hotels, Inc. ("SNK")[1] negligently failed to install or maintain a safety bar for the shower in his hotel room, causing him severe injuries when he slipped and fell during his stay. (See Doc. 2). Before the court is defendant SNK's motion (Doc. 8) to dismiss Patsoureas's complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). FED. R. CIV. P. 12(b)(2). For the reasons that follow, the court will grant the motion.

---

[1] Defendant SNK Hotels, Inc. avers that "SNK Hotels, LLC" is the correct name for SNK Hotels, Inc. and that SNK Hotels, Inc. does business as "Comfort Suites." (Doc. 9 at n.1). For the sake of brevity, the court will refer to defendant SNK Hotels, Inc. as "SNK."

I.    **Factual Background & Procedural History**

SNK is an Ohio limited liability company with its principal place of business at 1234 Omni Plex Drive in Cincinnati, Ohio.[2] (Doc. 8-3 ¶ 2; see Doc. 2 ¶ 4). "Comfort Suites" is the brand name under which SNK operates its hotel, which is also located at 1234 Omni Plex Drive. (Doc. 2 ¶¶ 3-4; Doc. 8-3 ¶ 3). Patsoureas currently resides in York, Pennsylvania. (Doc. 2 ¶ 1).

On May 26, 2016, Patsoureas purchased an overnight stay at SNK's Comfort Suites in Cincinnati, Ohio. (Id. ¶ 6). Patsoureas attempted to use the shower within his room the next day. (Id. ¶ 7). Unfortunately, Patsoureas slipped and fell, sustaining severe injuries. (Id. ¶ 10).

Plaintiff commenced this action in the Court of Common Pleas for Dauphin County on February 24, 2017. (Doc. 2). Defendants removed the action to the Middle District of Pennsylvania. (Doc. 1). On May 8, 2017, SNK filed the instant motion to dismiss. (Doc. 8). The motion is fully briefed (Docs. 9, 15, 16) and ripe for disposition.

II.   **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a complaint for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). In

---

[2] Patsoureas alleges in his complaint that SNK is an Arizona company. (Doc. 2 ¶ 4). SNK remonstrates that it is not affiliated with the alleged office in Arizona, and that it is an Ohio limited liability company. (Doc. 9 at 2; see Doc. 8-3 ¶ 1). Patsoureas does not respond to this statement in his briefing. (See Doc. 15 at 1-2). Hence, the court finds that Patsoureas has effectively waived this contention as to SNK's place of incorporation. See D'Angio v. Borough of Nescopeck, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999).

2

ruling on a Rule 12(b)(2) motion, the court must accept the allegations in the complaint as true and draw all reasonable inferences supported by the well-pleaded factual allegations in the plaintiff's favor. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002); Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992). The court's review is not limited to the face of the pleadings, as consideration of affidavits submitted by the parties is both appropriate and required. See Carteret Sav. Bank, 954 F.2d at 146.

Although the plaintiff bears the ultimate burden of proving personal jurisdiction over a defendant, Mellon Bank (East) PSFS Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992), the plaintiff need not make such a showing at the pleading stage of litigation. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009). To survive a motion to dismiss, the plaintiff must merely allege sufficient facts to establish a *prima facie* case of jurisdiction over the defendant. Id.; Carteret Sav. Bank, 954 F.2d at 142 n.1. When claims of jurisdiction are not clearly frivolous, courts ordinarily allow jurisdictional discovery. See Metcalfe, 566 F.3d at 335-36 (citing Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357, 362 (3d Cir. 1983)).

### III. Discussion

SNK argues that it lacks sufficient minimum contacts with Pennsylvania to justify the court's exercise of personal jurisdiction. (Doc. 8 at 2-3). SNK avers that it does not: (1) conduct business in the Commonwealth, (2) hold any offices or employees in the Commonwealth, (3) own property in the Commonwealth, or (4) advertise or solicit business in the Commonwealth. (Id. at 5; Doc. 9 at 7-10).

3

Patsoureas rejoins that SNK purposefully directed its activities at the Commonwealth by operating as part of Choice Hotels, which provides services within the state of Pennsylvania. (Doc. 15 at 2).

A federal court may assert jurisdiction over a nonresident of the forum state to the extent authorized by the law of the forum. See FED. R. CIV. P. 4(k)(2). The Pennsylvania Long-Arm Statute grants jurisdiction coextensive with that permitted by the Due Process Clause of the Fourteenth Amendment. 42 PA. CONS. STAT. § 5322(b). The court's constitutional inquiry is guided by the "minimum contacts" test established in International Shoe Co. v. Washington, 326 U.S. 310 (1945). Under this test, the plaintiff must show that the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316 (internal quotations and citation omitted); see Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007). The focus of the minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation," Shaffer v. Heitner, 433 U.S. 186, 204 (1977), such that the defendant has fair warning that he may be subject to suit in that forum. Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001); Marten, 499 F.3d at 296. "[T]he mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980) (internal citation omitted).

A federal court must possess one of two forms of personal jurisdiction to comport with these principles. See D'Jamoos *ex rel.* Estate of Weingeroff v. Pilatus

Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-15 (1984)).  General jurisdiction allows a court to exercise its jurisdiction over any party that possesses "continuous and systematic" contacts with the forum state, regardless of whether the claim arises out of the party's forum-related activities.  Helicopteros, 466 U.S. at 415 n.9; Marten, 499 F.3d at 296.  Specific jurisdiction, on the other hand, allows the court to hear claims arising out of or relating to the party's contacts with the forum state.  Helicopteros, 466 U.S. at 414 n.8; Telcordia Tech Inc. v. Telkom SA Ltd., 458 F.3d 172, 177 (3d Cir. 2006).

Patsoureas asserts only general jurisdiction based on SNK's relationship with Choice Hotels.  (Doc. 15 at 2).  The issue central to the general jurisdiction determination is whether the defendant maintains "perpetual, abiding ties with the forum."  *In re* Chocolate Confectionary Antitrust Litigation, 674 F. Supp. 2d 580, 596-97 (M.D. Pa. 2009) ("Chocolate II").  In these cases it is not the quantity of contacts that is significant, but the quality of those contacts.  Compare Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445 (1952) with Helicopteros, 466 U.S. at 416-18.  Contacts giving rise to jurisdiction must be "the bread and butter of [the defendant's] daily business."  Provident Nat'l Bank v. California Federal Sav. & Loan Ass'n., 819 F.2d 434, 438 (3d Cir. 1987); see also Chocolate II, 674 F. Supp. 2d at 598 n.24 (citing Metcalfe, 566 F.3d at 335).  SNK contends that its complete lack of contact with Pennsylvania, as well as the tenuous connection between SNK's individual hotel and the overarching brand name, does not comport with traditional notions of fair play and substantial justice.  (Doc. 9 at 6-7; Doc. 16 at 2).  We agree

that the complaint is devoid of *allegata* sufficient to establish general jurisdiction on this basis.

A plaintiff may also assert an alter ego relationship between a parent company and its subsidiary as an alternate means of establishing a court's jurisdiction over a defendant. Chocolate II, 674 F. Supp. 2d at 598. The hallmarks of an alter ego relationship are invasive control by a parent corporation over its subsidiary, and disregard for traditional corporate boundaries. See 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 108.42 (3d. ed. 2012). Such control must exceed the usual supervision that a parent exercises over a subsidiary. See Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 300-01 (3d Cir. 2008); Chocolate II, 674 F. Supp. 2d at 598 (citing Simeone *ex rel.* Estate of Albert Francis Simeone, Jr. v. Bombardier-Rotax GmbH, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005)). Hence, to establish an alter ego scenario, the parent company's control must go beyond mere monitoring of the subsidiary's business plans and profitability; it must rise to the level of interference with the subsidiary's day-to-day operations. See United States v. Bestfoods, 524 U.S. 51, 69 (1998). Even when a parent corporation interferes with daily operations, that interference alone may not be determinative. If a parent and subsidiary continue to respect traditional corporate boundaries by maintaining, for example, their own bylaws, articles of incorporation, and boards of directors, "the subsidiary will not be deemed to be the 'alter ego' of the parent, no matter how much control the parent exercises." Poe v. Babcock Int'l., PLC, 662 F. Supp. 4, 6 (M.D. Pa. 1985).

Courts evaluate corporate dependence in light of whether:

    (1) the parent owns all or a significant majority of the subsidiary's stock,

    (2) commonality of officers or directors exists between the two corporations,

    (3) the group possesses a unified marketing image, including common branding of products,

    (4) corporate insignias, trademarks, and logos are uniform across corporate boundaries,

    (5) group members share employees,

    (6) the parent has integrated its sales and distribution systems with those of its subsidiaries,

    (7) the corporations exchange or share managerial or supervisory personnel,

    (8) the subsidiary performs business functions that would ordinarily be handled by a parent corporation,

    (9) the parent uses the subsidiary as a marketing division or as an exclusive distributor, and

    (10) the parent exercises control or provides instruction to the subsidiary's officers and directors.

*In re* Chocolate Confectionary Antitrust Litig., 602 F. Supp. 2d 538, 569-70 (M.D. Pa 2009) (citing Simeone, 360 F. Supp. 2d at 675); accord Genesis Bio. Pharms. v. Chiron Corp., 27 F. App'x 94, 98 (3d Cir. 2002). No single factor is dispositive. Simeone, 360 F. Supp. 2d at 675. The court may also consider any evidence bearing on the corporations' functional interrelationship. Id. Plaintiffs may rely upon an alter ego connection to acquire jurisdiction over either a foreign parent or a foreign subsidiary based upon their relationship with an in-forum entity. Id.

7

Patsoureas asks the court for jurisdictional discovery to establish personal jurisdiction based on SNK's relation to its parent company, Choice Hotels. (Doc. 15 at 2). Patsoureas has the burden of demonstrating a *prima facie* case of personal jurisdiction in order to qualify for jurisdictional discovery. Metcalfe, 566 F.3d at 335-36; Carteret Sav. Bank, 954 F.2d at 146. Patsoureas fails to meet this burden.

Patsoureas cannot prove a *prima facie* case by resting on the bare allegations of his complaint as he does *sub judice*. He merely avers that Choice Hotels "supervises and sets forth protocols in the operations of the hotels which are a part of its group including [SNK's] Comfort Suites in Cincinnati, Ohio." (Doc. 15 at 2). This broad allegation establishes only that SNK is a subsidiary of Choice Hotels, which is insufficient to establish a *prima facie* case of personal jurisdiction based on an alter ego theory. See Kehm, 537 F.3d at 300-01; Chocolate II, 674 F. Supp. 2d at 598. Patsoureas does not adduce any supplemental materials which would support a finding of alter ego jurisdiction. The court requires more than mere speculation of an alter ego relationship to subject SNK to general jurisdiction in Pennsylvania.

## IV. Conclusion

The court will grant SNK's motion (Doc. 8) to dismiss for lack of personal jurisdiction. An appropriate order shall issue.

      /S/ CHRISTOPHER C. CONNER
      Christopher C. Conner, Chief Judge
      United States District Court
      Middle District of Pennsylvania

Dated:    August 9, 2017